Electronically Filed
Supreme Court
SCWC-11-0000998
28-JUN-2013
09:58 AM

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

ASSOCIATION OF APARTMENT OWNERS OF THE WAIKOLOA BEACH VILLAS,
by its Board of Directors,
Petitioner/Applicant-Appellee,

vs.

SUNSTONE WAIKOLOA, LLC,
Respondent/Respondent-Appellant.

SCWC-11-0000998

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-11-0000998; S.P. NO. 11-1-007K)

June 28, 2013

RECKTENWALD, C.J., NAKAYAMA, ACOBA, MCKENNA, AND POLLACK, JJ.

OPINION OF THE COURT BY ACOBA, J.

We hold that Section R.4(c) of the Declaration of Condominium Property Regime for the Waikoloa Beach Villas (Declaration) violates Hawai'i Revised Statutes (HRS) § 514B-105(a)[1] because it imposes limitations on Petitioner/Applicant-

---

[1]      HRS § 514B-105 provides in relevant part as follows:

**§ 514-105  Association; limitations on powers**

Appellee Association of Apartment Owners of the Waikoloa Beach Villas, (Petitioner or the Association) in arbitration or litigation with Respondent/Defendant-Appellant Sunstone Waikoloa, LLC (Respondent) more restrictive than those imposed on other persons.  For the reasons stated herein, we vacate in part and affirm in part the March 4, 2013 judgment of the Intermediate Court of Appeals (ICA) filed pursuant to its January 29, 2013 Published Opinion.

I.

A.

The Waikoloa Beach Villas condominium project (Villas) was apparently developed by Respondent in 2004.  On November 12, 2004 Respondent executed the Declaration of Condominium Property Regime for Villas (the Declaration).  Section R.4(c) of the Declaration is relevant to this case and imposes numerous requirements that Petitioner must meet before initiating arbitration or litigation proceedings against Respondent. Generally, Section R authorizes Petitioner to defend itself in any litigious proceeding, and to "institute, prosecute, maintain/or intervene in any" "Proceeding" "subject to full compliance with" conditions set forth in two categories of proceedings denominated as "operational proceedings" and

_____

(a) The declaration and bylaws may not impose limitations on the power of the association to deal with the developer which are <u>more restrictive than the limitations imposed on the power of the association to deal with other persons</u>.

(Emphasis added.)

2

"development controversies."

**R. Claims and Litigation**
[Petitioner] . . . shall have the power and the duty to reasonably defend [itself] in any pending or potential lawsuit, arbitration, mediation, or governmental proceeding, and [Petitioner] shall have the power, but not the duty, to reasonably institute, prosecute, maintain and/or intervene in any lawsuit or administrative proceeding (collectively referred to as a Proceeding) provided, however, that each and any exercise of such power(s) shall be subject to full compliance with the following provisions:

The first category, "Operational Proceedings," as defined by Section R.1, covers seven specific types of controversies, including (1) enforcement of the Declaration, Bylaws, and Project Rules, (2) the imposition of assessments, (3) challenges to taxation, (4) protection against threats to the health and safety of all Owners, (5) proceedings based on a contract or purchase order entered into in the ordinary course of [Petitioner's] business, (6) counterclaims in Proceedings initiated against Petitioner, and (7) matters involving less than $10,000.00.

**1. Operational Proceedings**.
Any [p]roceeding brought by Petitioner (i) to enforce the provisions of the Project Documents (including, without limitation, the foreclosure of liens), or (ii) for the imposition and/or collection of assessments pursuant to the Project Documents, or (iii) involving challenges to real property or ad velorum taxation, or (iv) to protect against any matter which imminently and substantially threatens the health, safety, and welfare of all of the Owners, or (v) against a supplier, vendor, contractor, or provider of services, pursuant to a contract or purchase order with the Association and in the ordinary course of the Association's business, or (vi) by way of counterclaim in a Proceeding instituted against the Association, or (vii) for money damages wherein the total amount in controversy for all matters arising in connection with the action is not likely to exceed Ten Thousand Dollars ($10,000.00) in the aggregate; shall be referred to herein as an "Operational Proceeding." Subject to the provisions of Sections R.3 and R.4 below relating to a "Development Controversy" or "Development Controversies" (as defined below), the Board from time to time may cause an Operational Proceeding to be commenced and prosecuted.

(Emphases added.) Section R.2 mandates that all proceedings

undertaken by Petitioner except operational proceedings require approval by 75% of the owners of Villas.

> **2. Association Approval**.
> Except with respect to an Operational Proceeding, and subject to the provisions of Sections R.3 and R.4 below relating to a Development Controversy or Development Controversies, no [p]roceeding shall be commenced or prosecuted by the Board or [Petitioner] unless approved by the affirmative vote of not less than seventy-five percent (75%) of the Owners at a meeting of the Association called for such purpose.

(Emphases added.)

The second category of proceedings, "Development Controversies," as defined by Section R.3, involves "any Proceeding . . . against [Respondent]."

> **3. Development Controversies**.
> Any [p]roceeding involving [Petitioner] and/or the Board against [Respondent] . . . arising from or otherwise relating to the Governing Documents, any express or implied warranty, any construction defects, issues involving the adequacy of reserves, or any other matter, of whatever nature, involving the Project (excepting, however, an Operational Proceeding brought against Declarant solely in its capacity as an Apartment Owner) shall be referred to herein as a "Development Controversy" or as "Development Controversies."

(Emphases added.)

Section R.4 requires that development controversies must proceed through negotiation, Section R.4(a); mediation, Section R.4(b); and finally arbitration or litigation, Section R.4(c).

> **4. Proceedures for Development Controversies.**
> To protect [Petitioner] and the Owners from being subjected to potentially costly or prolonged Development Controversies without full disclosure, analysis, and consent, and to protect [Petitioner] and individual Board members from charges of negligence, breach of fiduciary duty, conflict of interest, or acting in excess of their authority or in a manner not in the best interests of [Petitioner] and the Owners, and to help ensure voluntary and well-informed consent and clear and express authorization by the Owners, strict compliance with the following provisions of this Section R.4 shall be mandatory with regard to any and all Development Controversies commenced, instituted, and/or maintained by [Petitioner]:

4

> (a) Negotiation
> (i) . . . [Petitioner] shall give written notice to [Respondent] describing the nature of all claims against [Respondent] (the Dispute) and a description of what [Petitioner] believes shall be done to resolve the dispute. [Petitioner shall also propose a date and time for a conference . . . .  If, as a result of the conference, the Dispute or certain issues in the Dispute have been resolved and the issues, if any, that remain unresolved and will require Mediation (as defined below).
> (ii) In the case of any Dispute with respect to a deficiency in . . . construction . . . "Negotiation" shall mean, to the extent applicable, the procedure set forth in the Hawaiʻi Contractor Repair Act . . . .
> (b)  In the event that the parties have completed the Negotiation as required by subsection R.4(a) above but have failed to resolve the entire Dispute, then, if either of the parties wishes to pursue the Dispute further, the unresolved aspects of the Dispute shall be resolved, if possible, by mediation conducted with the assistance of a single mediator in accordance with the Arbitration Rules, Procedures, and Protocols of Dispute Prevent and Resolution, Inc. then in effect. . . . . Any Mediation shall be conducted in the City and County of Honolulu, and shall be governed by the laws of the State of Hawaii. . .
> ...

(Emphases added.)  Section R.4(c)(1) through (3) mandates conditions imposed on Petitioner in connection with the initiation of arbitration or litigation against Respondent.

> (c) In the event that [] Mediation, as required by subsection R.4(b) above, fails to reasonably resolve the Development Controversy, [Petitioner] shall not be authorized to commence, institute or maintain any arbitration or litigation of such Development Controversy until and unless the Board has fully complied with the following procedures:
> (1) [Petitioner] shall first investigate the legal merit, feasibility, and expense of prosecuting the Development Controversy by obtaining a written opinion of a licensed Hawaii attorney regularly residing in Hawaii, with a Martindale-Hubbell rating of 'bv' or better,[2] expressly stating that such attorney has reviewed the underlying facts and data in sufficient, verifiable detail to render the opinion, and expressly opining that [Petitioner] has a substantial likelihood of prevailing on the merits with regard to the Development Controversy without substantial likelihood of incurring any material liability with respect to any counterclaim which may be asserted against the [Petitioner].
> (2) Said attorney opinion letter shall also contain the attorney's best good faith estimate of the amount of legal costs, . . . which are reasonably expected to be incurred for prosecution to completion (including appeal) of the Development Controversy.
> (3) Upon receipt and review of the Attorney Letter, if two-thirds

---

[2]     Martindale-Hubbell rates lawyers through a process of peer review. According to Martindale-Hubbell a "bv" rating "is the maximum rating a lawyer can receive who has been admitted to the bar from [sic] 5-9 years."

> (2/3) or more of the Board affirmatively votes to proceed with the institution or prosecution of, and/or intervention in, the Development Controversy . . . [Petitioner] shall call for a vote of the Owners, whereupon: . . . <u>if seventy-five percent (75%) or more of the Owners vote in favor of pursuing such Development Controversy and in favor of levying a Special Litigation Assessment on the apartment owners in the amounts and for the duration set forth in the Special Assessment Report and/or of entering into the loans proposed to fund necessary borrowings,</u> then the Board shall be authorized to proceed to institute, prosecute, and/or intervene in the Development Controversy. <u>In such event, [Petitioner] shall engage the attorney who gave the opinion and quote set forth in the Attorney Letter, which engagement shall be expressly subject to the Attorney Letter. . . .</u>

(Emphases added.)

R.5 requires that disputes between Petitioner's members and Respondent be subject to "final and binding arbitration."

> **5. Warranty**.
> The Association and each Owner acknowledge that each initial purchaser of an Apartment has entered into a separate Deposit Receipt, Reservation, and Sales Agreement ("Purchase Agreement") with [Respondent], which provides for mandatory arbitration of claims and disputes between the Owner of such Apartment and [Respondent], all pursuant to [Respondent's] Home Builder's Limited Warranty . . . . [Petitioner] and each Owner covenant and agree to abide by said warranty program. <u>In accordance with [Respondent's] Home Builder's Limited Warranty,</u>[3] and the agreement of [Petitioner] and each Owner to abide by said warranty program, <u>[Petitioner] and each Owner covenant and agree that any and all claims and/or disputes of any kind relating to the common elements of the Project or to the Apartments . . . shall be submitted by [Petitioner] and/or each Owner, as applicable, to final and binding arbitration pursuant to and in accordance with the provisions of the arbitration agreement contained in [Respondent's] Home Builder's Limited Warranty, which arbitration agreement is incorporated herein as though fully set forth.</u>

(Emphases added.)

R.6 restricts the source of funding for proceedings other than "Operational Proceedings."

> **6. Funding of Proceedings**
> In no event shall any Association reserve fund or working capital fund be used as the source of funds to institute, prosecution, maintain and/or intervene in any [p]roceeding <u>other than an</u>

---

[3]     By mandating arbitration "[i]n accordance with [Respondent's] Home Builder's Limited Warranty," Section R.5 of the Declaration incorporates by reference the arbitration provision in the Home Builder's Limited Warranty discussed <u>infra</u>.

Operational Proceeding . . . .

(Emphasis added).  The Declaration also provides that "[i]f any provision of this Declaration shall be declared invalid, all other provisions of the Declaration shall continue in full force and effect as if the invalid provision had not been included."

As referenced in the Declaration, the Home Builder's Limited Warranty provided a "binding arbitration procedure" for disputes between either owners or Petitioner and Respondent:

> **VIII. Binding Arbitration Procedure**
> Any disputes between You[4] and Us,[5] or parties acting on Our behalf, including PWC . . . will be resolved by binding arbitration.  Binding arbitration shall be the sole remedy for resolving any and all disputes between You and Us . . .
> . . . .
> The arbitration shall be conducted by Construction Arbitration Services, Inc., or such other reputable arbitration service that PWC[6] shall select, at its sole discretion, at the time the request for arbitration is submitted.  The rules and procedures of the designated arbitration organization, that are in effect at the time the request for arbitration is submitted, will be followed[7]. . .
> . . . .
> The process for You to initiate arbitration is described below
> Step 1[:] You complete a Binding Arbitration Request Form and mail it to PWC along with the appropriate arbitration filing fee . . . .
> Step 2[:] PWC will arrange the arbitration proceeding. . . .

(Emphases added).

---

[4]     The Home Builder's Limited Warranty defined "you" as "the Homeowner and the Homeowner's Association."

[5]     The Home Builder's Limited Warranty defined "us" as "the builder," i.e., Respondent.

[6]     The Home Builder's Limited Warranty defined "PWC" as "Professional Warranty Service Corporation which administers the warranty program in which [Respondent] participate[s]."

[7]     The Warranty provides that PWC shall select the arbitration service "at its sole discretion."  However, the Warranty also provides that the rules and procedures of the designated arbitration organization shall apply.  Because Petitioner has not challenged this provision, it is assumed Petitioner has no objection to this "procedure."

B.

Between 2007 and 2009, Petitioner commissioned inspection reports of the Villas, which documented several purported construction defects. On October 7, 2009, Petitioner contacted Respondent to resolve issues regarding the defects. Negotiations between the parties continued until March 30, 2011, when Petitioner filed a Motion to Compel Mediation and Arbitration in the court. Petitioner argued that it had fulfilled all of the requirements of Section R.4(a) of the Declaration. On the other hand, Petitioner claimed that Respondent had failed to comply with the Hawaiʻi Construction Repair Act as required by Section R.4(a)(i) of the Declaration, apparently because Respondent did not respond to Petitioner's claims within 30 days. (Citing HRS § 672E-4.) Therefore, Petitioner asked the court to "submit the present dispute to mediation and arbitration."

Petitioner did not claim that it had fulfilled the requirements of sections R.2, R.4(c) or R.5 of the Declaration. Instead, Petitioner argued that "Section R is in violation of [HRS §] 514B-105(a), and may not be enforced." Petitioner also argued that "Declaration Section R is Unconscionable."

Respondent filed an opposition memorandum, arguing that Petitioner could not request arbitration because it had failed to comply with the requirements of the Declaration. It maintained, inter alia, that Section R of the Declaration did not violate HRS

8

§ 514B-105(a) and was not unconscionable. Petitioner filed a reply memorandum, arguing, inter alia, that "the requirements outlined in the Home Builder's Limited Warranty also violate [HRS §] 514B-105(a) as it creates greater restrictions in [Petitioner's] dealing with [Respondent] compared to any other person."

On July 19, 2011, the court issued an Order granting Petitioner's Motion to Compel Mediation and Arbitration "for the reasons set forth in Applicant's Motion[] and Reply Memoranda [sic]."

## II.

Respondent appealed to the ICA. The ICA reversed the court's order granting Petitioner's Motion to Compel Mediation and Arbitration. Association of Apartment Owners of Waikoloa Beach Villas v. Sunstone Waikoloa, LLC, 129 Hawaiʻi 117, 123, 295 P.3d 987, 993 (App. 2013). As to HRS § 514B-105(a), the ICA held that "Section R.2 . . . and Section R.6 . . . do not apply only to proceedings against the developer; rather, the provisions apply to any proceeding other than an 'operational proceeding.'" Id. at 121, 295 P.3d at 991. The ICA stated that Section R.2 and Section R.6 did not violate HRS § 514B-105(a) because they "limit[ed] [Petitioner's] power to institute major proceedings against any party and do not favor [Respondent]." Id. The ICA apparently did not address Sections R.4 or R.5 of the Declaration.

9

The ICA also held that Section R of the Declaration and the Home Builder's Limited Warranty were not unconscionable. Id. According to the ICA, the element of "procedural unconscionability" was lacking because "the [Condominium Property Act (CPA)[8]] requires developers [to] draft and record a declaration before offering any units for sale to the public." Id. at 122, 295 P.3d at 992 (citing Pinnacle Museum Tower Ass'n v. Pinnacle Market Development (US), LLC, 282 P.3d 1217, 1231-33 (Cal. 2012)). Additionally, the ICA determined, inter alia, that the "the arbitration provisions are not so unreasonable or unfairly one-sided as to be substantively unconscionable." Id. at 123, 295 P.3d at 993.

The requirement in Section R.4 to retain a bv rated attorney was not "unduly burdensome" because Petitioner was able to "engage and retain a [bv] rated attorney since the beginning of this dispute." Id. According to the ICA, the opinion letter "only needs to provide an estimate of an association's likelihood of success and the legal costs and fees, which would help unit owners decide whether to incur the burdens of a proceeding." Id. On these bases, the ICA held that Section R of the Declaration and the Home Builder's Limited Warranty were "enforceable against [Petitioner]." Id.

The ICA did not address whether or not Petitioner had failed to comply with the requirements of the Declaration and

---

[8]    The CPA is located in HRS Chapter 514A.

10

Home Builder's Limited Warranty for instituting an arbitration proceeding or filing suit. Instead, after deciding that the provisions at issue were enforceable against Petitioner, the ICA vacated the court's Order and remanded the case for further proceedings. Id.

### III.

In its Application, Petitioner questions whether, inter alia, the ICA committed a grave error in holding "HRS § 514B-105(a) inapplicable on the basis that the Declaration makes a distinction between 'minor' and 'major' proceedings and therefore the provisions of Section R of the Declaration do not favor the developer Sunstone alone[.]"[9] Respondent filed a Response on April 11, 2013.

### IV.

### A.

Regarding this question, Petitioner argues that (1) contrary to the ICA's decision, Sections R.2 and R.6 do not draw "a reasonable distinction between major and minor proceedings" because that distinction is not found in HRS § 514B-105, (2) "[o]ther than 'Operational Proceedings' and 'Development Controversies,' there are not other 'proceedings' specifically described, discussed, or expressly provided for under the

---

[9] Petitioner also asks whether grave error was committed by the ICA 2) "when it allowed Developers to control the practice of Law in Hawaii"; 3) when it found that Section R.4(c) of the Declaration [is] . . . unconscionable;" and 4) when it "erroneously relied upon new California case law that actually favors the [Petitioner's] position." Inasmuch as our answer to the first question is dispositive, we do not decide these other inquiries.

11

Declaration," and (3) contrary to the ICA's ruling, "Sections R.2, R.4, and R.6 are limitations on the power of [Petitioner] to deal with [Respondent]" because "[Petitioner] would not have to go through all of the steps detailed in Section R.2, R.4, and R.6 in order to assert its rights or protect its interests against persons or entities other than [Respondent]."[10]

In its Response, Respondent contends (1) that Sections R.2 and R.6 of the Declaration are not invalidated by HRS § 514B-105(a), because those provisions "apply to any proceeding other than an 'operational proceeding,'" (2) "the Declaration does not limit the consent and funding requirements in Sections R.2 and R.6 to actions against [Respondent]," (3) because "matters involving alleged construction defects and other development issues are inherently likely to be the most complex, costly, and protracted matters that [Petitioner] will ever litigate or arbitrate," it is reasonable to "specif[y] additional steps [in Section R.4] that a Board must take in obtaining the unit owners' informed consent," and (4) none of the provisions of Section R violate HRS § 514B-105(a) because the restrictions in the

---

[10]    Before the ICA, Petitioner also argued that "the requirements of the Home Builder's Limited Warranty [incorporated in the Declaration in Section R.5] violated HRS § 514B-105(a) as it creates greater restrictions in the Association's dealing with the developer compared to any other person." The ICA's opinion did not explicitly address whether the Home Builder's Limited Warranty violated HRS § 514B-105(a).  However, the ICA implicitly held that the Home Builder's Limited Warranty was valid under HRS § 514B-105(a) when it concluded that "the arbitration provisions [i.e., the Declaration and the Warranty] are . . . enforceable against [Petitioner]." Sunstone Waikoloa, 129 Hawaiʻi at 123, 295 P.3d at 993.  Petitioner did not argue before this court that Section R.5 or the Home Builder's Limited Warranty violates HRS § 514B-105(a).  Therefore, this argument is waived. See Hawaiʻi Rules of Appellate Procedure Rule 40.1(d)(1).

12

Declaration only apply to Association's <u>board</u>, and not to Association itself.

V.

A.

To reiterate, pursuant to HRS § 514B-105(a), "[t]he declaration and bylaws may not impose limitations on the power of the association to deal with the developer which are more restrictive than the limitations imposed on the power of the association to deal with other persons."  Petitioner's assertion that this language is unambiguous is incorrect inasmuch as the phrase "other persons" requires further interpretation.  It is not clear from the text of HRS § 514B-105(a) whether a limitation which restricts the power of the developer in addition to <u>some</u>, but not all, "other persons" is prohibited by the statute.  In this respect, the statute's text is ambiguous.  <u>Hawaiʻi Providers Network, Inc. v. AIG Hawaiʻi Ins. Co.</u>, 105 Hawaiʻi 362, 369, 98 P.3d 233, 240 (2004) ("When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of expression used in a statute an ambiguity exists.") (internal quotation marks and citations omitted).

HRS § 514B-105(a) was enacted by 2004 Haw. Sess. Laws Act 164.  In Part 1 of Act 164, the legislature stated that "[t]his Act is the result of the [real estate commission's] three year effort to recodify Hawaiʻi's condominium law," and that the "commission's 'Final Report to the Legislature' . . . should be

13

used as an aid in understanding and interpreting this Act." 2004 Haw. Sess. Laws Act 164. In the Final Report to the Legislature, the commission's only comment on Section 5-5(a), the section that would become HRS § 514B-105(a), was that the "[Uniform Common Interest Ownership Act (UCOIA)] § 3-102(b) is the source of subsection (a)." Following an amendment to UCIOA § 3-102(b) in 2008, the Commentary to the UCIOA declared that "the amended text preserves the basic rule in the earlier Act that prevents the declarant[11] from imposing <u>unique</u> limits on the association's power to deal with the declarant," (emphasis added) i.e., limits that applied <u>only</u> to the declarant. Thus, the drafters of the UCIOA understood § 3-102(b)'s reference to prohibit only limitations on the power of the Association that applied "uniquely" to litigation between the Association and the declarant.

VI.

On their faces, Sections R.2 and R.6 do not appear to violate HRS § 514B-105(a). Sections R.2 and R.6 draw only a distinction between "Operational Proceedings" and other proceedings. Section R.2 states that "except with respect to an Operation Proceeding, and subject to the provisions below relating to a Development Controversy or Development Controversies, no Proceeding shall be commenced or prosecuted by

---

[11] Declarant is defined as "one who has made a statement" or "<u>one who has signed a declaration</u>." <u>Black's Law Dictionary</u> at 467 (9th ed. 2009) (emphasis added). In the instant case, Respondent executed the Deposit, Receipt, Offer and Acceptance, and is therefore the declarant.

14

[Petitioner] unless approved by an affirmative vote of not less than 75% of owners." In other words, although Section R.4, controlling Development Controversies, may provide additional restrictions, the plain language of Section R.2 states that all Proceedings <u>other than "Operational Proceedings"</u> require approval of 75% of owners. Similarly, Section R.6 governs "any Proceeding (including, but not limited to any Development Controversy), <u>other than an Operational Proceeding</u>." (Emphasis added). Thus, Sections R.2 and R.6 control <u>all proceedings other than Operational Proceedings</u>.

Given the types of Proceedings categorized as "Operational Proceedings" by the Declaration, it cannot be said that Sections R.2 and R.6 apply "uniquely" to proceedings between Petitioner and Respondent. As pointed out by Respondent before the ICA, "Proceedings" that are not "Operational Proceedings" and thus are controlled by Sections R.2 and R.6 include, <u>inter alia</u>, "an action for damages in excess of $10,000.00 against an adjacent landowner," "an action against a board member for malfeasance," and "an action against a government entity over land use matters." Therefore, it is apparent that Sections R.2 and R.6 apply to actions that may be initiated against persons "other than" Respondent.[12] Moreover, as an action against

_____

[12] The ICA used the terms of "major" and "minor" proceedings in reasoning that Sections R.2 and R.6 applied to other persons in addition to Respondent. <u>See</u> <u>Sunstone Waikoloa</u>, 129 Hawaiʻi at 121, 295 P.3d at 991 (stating that Sections R.2 and R.6 "do not apply only to proceedings brought against the developer; rather, the provisions apply to any proceeding other than an 'operational proceeding.' . . . Thus, the Declaration draws a reasonable distinction between minor and major proceedings."). However, as

Respondent may be an action for damages wherein the total amount in controversy is not more than $10,000.00, it also may be possible for Petitioner to initiate litigation <u>against</u> Respondent that is an Operational Proceeding, and therefore not subject to the requirements of Sections R.2 and R.6.  In sum, Sections R.2 and R.6 apply to actions against "other persons," in addition to Respondent.  Consequently, it cannot be said that Sections R.2 and R.6 apply "uniquely" to Respondent only.  Hence, the ICA was right in holding that Sections R.2 and R.6 did not violate HRS § 514B-105(a).[13]

VII.

A.

However, Declaration Section R.4(c)[14] clearly does

_____

Respondent argued, Sections R.2 and R.6 apply to other persons irrespective of whether the subject matter was "major" or "minor."

[13]    In its Reply, Petitioner also challenged Sections R.2 and R.6 of the Declaration as unconscionable.  However, in the questions presented in its Application, Petitioner asked only if the ICA erred when it held Section R.4(c) was unconscionable.  Pursuant to HRAP Rule 40.1 (d)(1), "[t]he application for a writ of certiorari shall contain . . . a short and concise statement of the questions presented for decision," and "[q]uestions not presented according to this paragraph will be disregarded."  Petitioners' arguments regarding the unconscionability of Sections R.2 and R.6 of the Declaration are unrelated to any of the questions presented.  Hence, under Rule 40.1(d)(1) Petitioner's arguments are disregarded.

[14]    Petitioner states that "Section R.4" of the Declaration violates HRS § 514B-105(a).  However, before the court and the ICA, Petitioner apparently conceded that Sections R.4(a) and R.4(b) of the Declaration were valid inasmuch as Petitioner argued that it had fulfilled the requirements of Sections R.4(a), and therefore was entitled to "mediation and arbitration pursuant to the Declaration," apparently under Sections R.4(a) and R.4(b), which provide for the mediation of disputes.
        Thus, Petitioner apparently does not dispute the applicability of Sections R.4(a) and R.4(b).  Hence, those sections are not discussed further. <u>Cf.</u> <u>Roxas v. Marcos</u>, 89 Hawaii 91, 124, 969 P.2d 1209, 1242 (1998) (explaining that the doctrine of judicial estoppel prevents a party from "maintain[ing] inconsistent positions" or "tak[ing] a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him[.]").

violate HRS § 514B-105(a). Section R.4(c) requires that in "Development Controversies," Petitioner must, inter alia, hire an attorney with a Martindale-Hubble rating of "bv" or higher, obtain an opinion letter indicating that Petitioner has a substantial likelihood of success on the merits, and impose a "special litigation assessment" to fund arbitration or litigation. As discussed supra, "Development Controversies" are defined as "any Proceeding . . . against [Respondent]." Thus, by limiting Section R.4(c) to "Development Controversies," Respondent ensured that Section R.4(c) applies solely to proceedings against itself. In other words, Section R.4(c) represents a restriction limiting the power of Petitioner to act in proceedings against Respondent. Section R.4(c) applies only to actions against Respondent and not to actions against any "other person." HRS § 514B-105(a). Thus, Section R.4(c) violates HRS § 514B-105(a). By failing to address the validity of Section R.4(c), the ICA gravely erred.

                                B.

        Moreover, the disproportionate imposition of burdens on Petitioner in Section R.4(c) of the Declaration is precisely the type of abuse meant to be prevented by HRS § 514B-105(a). The obvious purpose of prohibiting the party drafting the Declaration (the developer) from imposing restrictions on the Association that apply only to arbitration or litigation with the developer is that such terms are likely to grant the developer an unfair

                                17

advantage.  Nearly all of the provisions of Section R.4(c) do in fact grant the developer an unfair advantage in "arbitration or litigation."

First, Sections R.4(c)(1) and (c)(3) of the Declaration require Petitioner to obtain an opinion letter from an attorney with a "bv" rating or higher, and, subsequently, to hire that attorney.  The effect of Sections R.4(c)(1) and c(3) is to require Petitioner, but not Respondent, to hire an attorney with a "bv" rating or better.  Thus, this requirement diminishes the pool of attorneys available to Petitioner, but not Respondent.

Second, Section R.4(c)(1) of the Declaration requires the opinion letter to state that Petitioner not have a substantial likelihood of incurring <u>any</u> material liability with respect to any counterclaim.  As Petitioner points out, hypothetically, this provision could preclude Petitioner from filing a suit for 10 million dollars if there existed a meritorious counterclaim for $50,000, even though the net value of the suit to Petitioner would be $9,950,000.  This provision operates to preclude meritorious suits if a viable counterclaim by Respondent exists, and thereby serves to limit Respondent's liability in actions brought by Petitioner.

Third, Section R.4(c)(3) of the Declaration requires Petitioner to distribute to each apartment owner a copy of the opinion letter written by Petitioner's attorney.  Petitioner maintains that because Respondent owns apartments in the Villas,

18

Respondent will inevitably have access to documents that should be protected by attorney client privilege and the work-product privilege.[15]  This court has explained that "[t]he attorney-client privilege is codified in the Hawaiʻi Rules of Evidence (HRE) Rule 503, which provides that a client 'has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client.'" Save Sunset Beach Coalition v. City and County of Honolulu, 102 Hawaiʻi 465, 484, 78 P.3d 1, 20 (2003) (quoting HRE Rule 503(b)). The purpose of the opinion letter is to inform Petitioner of its likelihood of success in arbitration or litigation.  This aids Petitioner in deciding whether or not it should pursue arbitration or litigation.  The letter thus "facilitat[es] the rendition of professional legal services" to Petitioner. Accordingly, the letter would be covered by HRE Rule 503.

The work-product privilege "has its foundation in [Hawaiʻi Rules of Civil Procedure] (HRCP) Rule 26," and protects materials "'prepared in anticipation of litigation or for trial.'" Id. (quoting HRCP Rule 26).  It is apparent that the opinion letter is "prepared in anticipation of litigation" because under the terms of the declaration the opinion letter is a prerequisite for litigation.  Thus, the opinion letter is covered by the work-product privilege.  Cf. United States v.

---

[15]    At a hearing, Respondent conceded that it owned several apartments in the Waikoloa Beach Villas.

Adlman, 134 F.3d 1194, 1200 (2d. Cir 1998) (stating that a memorandum, inter alia, "estimating the likelihood of success in litigation" would be covered by work-product privilege).

The information contained in the opinion letter could be extremely valuable to Respondent. For example, knowing Petitioner's attorney's opinion of Petitioner's likelihood of success and projected litigation costs could provide Respondent with a significant advantage in any potential settlement negotiations or arbitration proceedings. Consequently, in requiring Petitioner to disclose the opinion letter to all apartment owners, Section R.4(c)(3) compels Petitioner to reveal what may be adverse information to Respondent.[16]

Section R.4(c) of the Declaration, that applies only to actions that Petitioner brings against Respondent, serves to limit Respondent's liability, and burdens Petitioner's ability to protect its own interests. These terms are thus voided by HRS § 514B-105(a).

C.

Finally, Respondent's argument that Section R.4(c) of the Declaration is valid because it applies only to actions initiated by the Board, and not the Association, is incorrect. HRS § 514B-106(a) provides that "except as provided in the

---

[16]    We do not address whether there are any other statutory provisions or legal principles that might require disclosure of privileged information to apartment owners. Rather, we simply hold that, by imposing such a requirement on Petitioner here with regard to Development Controversies, Section R.4(c)(3) violates HRS § 514B-105(a).

declaration, the bylaws, subsection (b),[17] or other provisions of this chapter, the board may act in all instances on behalf of the association." In other words, the Association <u>may</u> act through its Board unless the declaration or bylaws provides otherwise. As discussed <u>supra</u>, however, Section R.4(c) restricts the board from action on behalf of the Association by, <u>inter alia</u>, prohibiting it from initiating arbitration or litigation unless it receives an opinion letter from an attorney with a rating of "bv" or higher, requiring that Petitioner have a substantial likelihood of success on the merits, and that it distribute that opinion letter to all apartment owners. Hence, Section R.4(c) of the Declaration hinders the Association in acting through its Board in proceedings against Respondent. Section R.4(c) of the Declaration, therefore, imposes limitations on the Association that apply solely in actions against Respondent. Consequently, Section R.4(c) violates HRS § 514B-105(a).

## VIII.

Therefore, to the extent that the ICA held that Section

---

[17] HRS § 514B-106(b) provides as follows:

(b) The board may not act on behalf of the association to amend the declaration or bylaws (sections 514B-32(a)(11) and 514B-108(b)(7)), to remove the condominium from the provisions of this chapter (section 514B-47), or to elect members of the board or determine the qualifications, powers and duties, or terms of office of board members (subsection (e)); provided that nothing in this subsection shall be construed to prohibit board members from voting proxies (section 514B-123) to elect members of the board; and provided further that the board may fill vacancies in its membership to serve until the next annual or special association meeting.

R.4(c) was "enforceable against [Petitioner]," <u>Sunstone Waikoloa</u>, 129 Hawaii at 123, 295 P.3d at 993, the ICA gravely erred. As noted, the Declaration provides that its provisions are severable, and thus the invalidity of any provision would not affect other provisions which "shall continue in full force and effect as if the invalid provision had not been included." Although Section R.4(c) is invalid, the other provisions, including Sections R.2 and R.6, have not been shown to violate HRS § 514B-105(a). For the same reason, Section R.5, of the Declaration which incorporates the Home Builder's Limited Warranty is not invalid.[18] Therefore, these provisions are enforceable against Petitioner.

Before the court, Petitioner did not establish that it had obtained the approval of 75% of the homeowners in the Waikoloa Beach Villas before filing its motion to compel mediation and arbitration, as required by Section R.2 of the Declaration. Nor did Petitioner maintain that it had followed the arbitration requirements in the Home Builder's Limited Warranty. Instead, Petitioner argued before the court that Section R.2 and R.6[19] of the Declaration and the Home Builder's Limited Warranty were invalid. The court apparently relied on

_____

[18]    As discussed <u>supra</u>, Petitioner did not argue before this court that Section R.5 of the Declaration, which incorporates by reference the Home Builder's Limited Warranty, violated HRS § 514B-105(a).

[19]    Section R.6 prevents Petitioner from funding Proceedings other than Operational Proceedings through Petitioner's general fund. However, there is no evidence in the record regarding the source of funding in the instant case.

these arguments in granting Petitioner's Motion to Compel

Arbitration.  The court erred in this respect.

IX.

Based on the foregoing, the March 4, 2013 judgment of

the ICA filed pursuant to its January 29, 2013 published opinion

is vacated in part and affirmed in part for the reasons stated

herein, and the case remanded to the court for further

proceedings consistent with this opinion.

| | |
|---|---|
| Terrance M. Revere, | /s/ Mark E. Recktenwald |
| Malia Nickison-Beazley, | |
| and Christopher A. Santos, | /s/ Paula A. Nakayama |
| for petitioner | |
| | /s/ Simeon R. Acoba, Jr. |
| Michael L. Freed, | |
| Brad S. Petrus, | /s/ Sabrina S. McKenna |
| and David R. Harada-Stone, | |
| for respondent | /s/ Richard W. Pollack |

