**Electronically Filed
Intermediate Court of Appeals
CAAP-11-0000998
29-JAN-2013
08:17 AM**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---


ASSOCIATION OF APARTMENT OWNERS OF THE WAIKOLOA BEACH VILLAS,
by its Board of Directors, Applicant-Appellee,
v.
SUNSTONE WAIKOLOA, LLC, Respondent-Appellant


NO. CAAP-11-0000998


APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(S.P. NO. 11-1-007K)


JANUARY 29, 2013


FOLEY, PRESIDING J., FUJISE AND REIFURTH, JJ.


OPINION OF THE COURT BY FOLEY, J.


Respondent-Appellant SunStone Waikoloa, LLC (SunStone) appeals from the November 10, 2011 Final Judgment and the July 19, 2011 "Order Granting Applicant Association of Apartment Owners of the Waikoloa Beach Villas, by its Board of Directors'

Motion to Compel Mediation and Arbitration" (Order), both entered in the Circuit Court of the Third Circuit[1] (circuit court).

## I. BACKGROUND

This appeal arises out of a construction dispute initiated by Applicant-Appellee Association of Apartment Owners of the Waikoloa Beach Villas (AOAO Waikoloa), by its Board of Directors (Board) against SunStone. SunStone is the developer of the Waikoloa Beach Villas. As required under Hawaii Revised Statutes Chapter 514A (2006 Repl.), the Condominium Property Act (CPA), SunStone recorded its Declaration of Condominium Property Regime of Waikoloa Beach Villas (Declaration). See HRS § 514A-11 (Supp. 2000). The Declaration describes the property, its easements and reserved rights, restrictions on use, and the administration of the condominium project.

Under Section R ("Claims and Litigation"), the Declaration addresses the Board's ability to initiate proceedings on behalf of AOAO Waikoloa. Pursuant to Section R.2 ("Association Approval"), initiating any proceeding other than an "operational proceeding" requires the approval of at least 75% of the unit owners. The Declaration generally defines an operational proceeding as a proceeding involving matters within the scope of AOAO Waikoloa's day-to-day operations or involving a total amount in controversy of less than $10,000. Section R.6 ("Funding of Proceedings") likewise applies to any proceeding other than an operational proceeding, and it prohibits the use of AOAO Waikoloa's reserve fund or working capital fund to pay for the proceeding.

Under Section R.4, SunStone inserted a clause requiring arbitration of any "development controversies," including construction disputes brought against SunStone.[2] Section R.4

---

[1]    The Honorable Elizabeth A. Strance presided.

[2]    The Declaration defines "development controversies" as follows:

(continued...)

also outlined a procedure for any development controversies maintained by the Board. The procedure required the Board to first participate in "good faith negotiation" with the other party by providing notice of the issues and participating in a conference, and if the negotiation failed, to then participate in mediation. If mediation failed to resolve the dispute, the Board could not commence arbitration or litigation unless it complied with the following requirements set forth in Section R.4(c):

> R.   **CLAIMS AND LITIGATION**
>
> . . . .
>
> 4.   Procedures for Development Controversies.
> . . . .
>
> (c)   . . .
>
> > (1)   The Board shall first investigate the legal merit, feasability, and expense of prosecuting the Development Controversy by obtaining a written opinion of a licensed Hawaii attorney regularly residing in Hawaii, with a Martindale-Hubbell rating of 'bv' or better,[3] expressly stating that such attorney has reviewed the underlying facts and data in sufficient, verifiable detail to render the opinion, and expressly opining that the [AOAO Waikoloa] has a substantial likelihood of prevailing on the merits with regard to the Development Controversy without substantial likelihood of incurring any material liability with respect to any counterclaim which may be asserted against the [AOAO Waikoloa].

---

[2](...continued)

> R.   **CLAIMS AND LITIGATION**
>
> . . . .
>
> 3.   Development Controversies. Any Proceeding involving the [AOAO Waikoloa] and/or the Board against Declarant or its agents, or any officer, director, member, partner or shareholder of Declarant or its agents (collectively and severally referred to in this Section R.3 and in Section R.4 below as "Declarant") arising from or otherwise relating to the Governing Documents, any express or implied warranty, any construction defects, issues involving the adequacy of reserves, or any other matter, of whatever nature, involving the Project[.]

[3]   According to Martindale-Hubbell, its rating system is based on peer reviews reflecting the confidential opinions of members of the bar and the judiciary. A BV rating is "an excellent rating for a lawyer with more experience" and is the maximum rating for lawyers admitted to the bar for five to nine years. Frequently Asked Questions About LexisNexis Martindale-Hubbell Peer Review Ratings, LexisNexis, available at http://law.lexisnexis.com/literature/LMH00074-0.pdf.

(2) Said attorney opinion letter shall also contain the attorney's best good faith estimate of the amount of legal costs, . . . which are reasonably expected to be incurred for prosecution to completion (including appeal) of the Development Controversy.

(3) Upon receipt and review of the Attorney Letter, if two-thirds (2/3) or more of the Board affirmatively votes to proceed with the institution or prosecution of, and/or intervention in, the Development Controversy, the Board thereupon shall duly notice and call a special meeting of the [AOAO Waikoloa]. . . . [T]he Board shall call for a vote of the Owners, whereupon: . . . if seventy-five percent (75%) or more of the Owners vote in favor of pursuing such Development Controversy and in favor of levying a Special Litigation Assessment on the apartment owners in the amounts and for the duration set forth in the Special Assessment Report and/or of entering into the loans proposed to fund necessary borrowings, then the Board shall be authorized to proceed to institute, prosecute, and/or intervene in the Development Controversy.

The initial individual owners purchased condominium units in Waikoloa Beach Villas pursuant to a standard sales agreement. The agreement noted, in all capitalized letters and in bold, that all claims relating to the agreement were subject to mandatory and "final and binding arbitration pursuant to and in accordance with the provisions of the arbitration agreement contained in the Home Builder's Limited Warranty (Warranty)[.]" The Warranty, which was also incorporated into the Declaration, stated the agreement is governed by the Federal Arbitration Act (FAA) (9 U.S.C.A. §§ 1-16) and required arbitration be initiated by mailing the Binding Arbitration Request Form to the Warranty's administrator, who would arrange the arbitration proceeding.

On October 7, 2009, the Board sent a letter to SunStone alleging certain construction defects. The Board requested a conference to discuss the defects in dispute, and the parties met on December 3, 2009. The parties continued to discuss repairs over the next several months, and on April 6, 2010, SunStone informed the Board it believed it had completed all work for which it was responsible. The Board responded on June 21, 2010, providing a list of items it believed still needed repair, and demanded mediation.

Further discussions failed to resolve the remaining issues, and the Board filed its Motion to Compel Mediation and Arbitration (Motion to Compel) in the circuit court on April 5, 2011. It is undisputed that the Board has not complied with the procedure set forth in Declaration Section R.4(c) or in the Warranty.

The circuit court held a hearing on May 16, 2011, and entered its Order in the Board's favor on July 19, 2011. Final Judgment was entered on November 10, 2011 from which SunStone timely appealed.

On appeal, SunStone argues the circuit court erred when it granted the Motion to Compel.[4] SunStone contends the circuit court could not compel arbitration because the Board failed to comply with the procedural requirements for initiating arbitration set forth in the Declaration and in the Warranty.

## II. STANDARDS OF REVIEW

### A. Motion to Compel Arbitration

We review a ruling on a motion to compel arbitration de novo and based on the same standards that apply to a summary judgment ruling. The Hawai'i Supreme Court has stated:

> The trial court can only decide, as a matter of law, whether to compel the parties to arbitrate their dispute if there is no genuine issue of material fact regarding the existence of a valid agreement to arbitrate. Therefore, we hold that the standard of review applicable to the trial court's decision in this case should be that which is applicable to a motion for summary judgment. Accordingly, we review this case de novo, using the same standard employed by the trial court and based upon the same evidentiary materials "as were before [it] in determination of the motion."

Koolau Radiology, Inc. v. Queen's Med. Ctr., 73 Haw. 433, 439-40, 834 P.2d 1294, 1298 (1992) (citation omitted).

---

[4] The circuit court's Final Judgment and Order compelled both mediation and arbitration. However, SunStone conceded willingness to mediate at the circuit court, and the parties' arguments to this court focus on the requirement to arbitrate. Therefore, we limit our discussion to the arbitration provisions in the Declaration and the Warranty.

### B.     Contract Interpretation

"As a general rule, the construction and legal effect to be given a contract is a question of law freely reviewable by an appellate court. . . .   These principles apply equally to appellate review of the construction and legal effect to be given a contractual agreement to arbitrate."  Brown v. KFC Nat'l Mgmt. Co., 82 Hawai'i 226, 239, 921 P.2d 146, 159 (1996) (internal quotation marks and citations omitted).

### III.  DISCUSSION

"[W]hen presented with a motion to compel arbitration, the court is limited to answering two questions: 1) whether an arbitration agreement exists between the parties; and 2) if so, whether the subject matter of the dispute is arbitrable under such agreement."  Koolau Radiology, 73 Haw. at 445, 834 P.2d at 1300.  The Board brought its motion pursuant to HRS § 658A-7 (2011)[5]; thus, the Board concedes the existence of an agreement to arbitrate the underlying dispute based on the Declaration. However, in its Motion to Compel, the Board contended the Declaration and Warranty provisions for initiating arbitration are unenforceable because the provisions (1) violate HRS § 514B-105(a) (2006 Repl.) and (2) are unconscionable.

---

[5]     HRS § 658A-7 states, in relevant part:

[§658A-7]  **Motion to compel or stay arbitration.**  (a) On motion of a person showing an agreement to arbitrate and alleging another person's refusal to arbitrate pursuant to the agreement:

(1) If the refusing party does not appear or does not oppose the motion, the court shall order the parties to arbitrate; and

(2) If the refusing party opposes the motion, the court shall proceed summarily to decide the issue and order the parties to arbitrate unless it finds that there is no enforceable agreement to arbitrate.

### A.    HRS § 514B-105(a) Is Inapplicable To This Case

HRS § 514B-105(a)[6] states: "The declaration and bylaws may not impose limitations on the power of the association to deal with the developer which are more restrictive than the limitations imposed on the power of the association to deal with other persons."  The Board contends Section R and the Warranty violate HRS § 514B-105(a) because the provisions impose limitations on AOAO Waikoloa's power to deal with SunStone that would not apply if AOAO Waikoloa wished to bring claims against other persons.

Contrary to the Board's contentions, however, Section R.2 (requiring approval by at least 75% of unit owners before commencing any major litigation or arbitration) and Section R.6 (governing funding of proceedings) do not apply only to proceedings brought against the developer; rather, the provisions apply to any proceeding other than an "operational proceeding." As noted above, an operational proceeding is a proceeding generally involving matters within the scope of AOAO Waikoloa's day-to-day operations with a small amount in controversy.  Thus, the Declaration draws a reasonable distinction between minor and major proceedings, recognizing that the latter may impose

---

[6]     Pursuant to HRS § 514B-22 (2006 Repl.), Chapter 514B's provisions on the management of condominiums (including HRS § 514B-105) apply to this case.  HRS § 514B-22 states, in relevant part:

§514B-22 Applicability to preexisting condominiums. Sections 514B-4, 514B-5, 514B-35, 514B-41(c), 514B-46, 514B-72, and part VI ["Management of Condominiums," HRS §§ 514B-101 to 514B-163 (2006 Repl.)], and section 514B-3 to the extent definitions are necessary in construing any of those provisions, and all amendments thereto, apply to all condominiums created in this State before July 1, 2006; provided that those sections:

(1) Shall apply only with respect to events and circumstances occurring on or after July 1, 2006; and

(2) Shall not invalidate existing provisions of the declaration, bylaws, condominium map, or other constituent documents of those condominiums if to do so would invalidate the reserved rights of a developer or be an unreasonable impairment of contract.

significant expenditures and liabilities on unit owners.  The
above provisions limit AOAO Waikoloa's power to institute major
proceedings against any party and do not favor SunStone alone.

**B.  The Arbitration Provisions Are Not Unconscionable**

HRS § 658A-6 (2011)[7] provides: "An agreement contained
in a record to submit to arbitration any existing or subsequent
controversy arising between the parties to the agreement is
valid, enforceable, and irrevocable except upon a ground that
exists at law or in equity for the revocation of a contract."
The Board argues the arbitration provisions are invalid because
they are unconscionable adhesion contract provisions.

A contract of adhesion "is drafted or otherwise
proffered by the stronger of the contracting parties on a 'take
it or leave it' basis[,]" such that the contract's terms are
imposed upon the weaker party who has no choice but to conform.
Brown, 82 Hawaiʻi at 247, 921 P.2d at 167.  Voiding a contract
for unconscionability requires a showing of both a procedural and
substantive element of unconscionability.  Id.  ("[A]
contract . . . is unenforceable if two conditions are present:
(1) the contract is the result of coercive bargaining between
parties of unequal bargaining strength; and (2) the contract
unfairly limits the obligations and liabilities of, or otherwise
unfairly advantages, the stronger party.").  The principle of
unconscionability is of preventing oppression and unfair
surprise, and not of disturbance of allocation of risks because
of superior bargaining power.  Lewis v. Lewis, 69 Haw. 497, 501,
748 P.2d 1362, 1366 (1988).

The Board argues the Declaration is procedurally
unconscionable because it was drafted by SunStone and recorded

---

[7]      Although the Warranty states it shall be governed by the Federal
Arbitration Act (FAA), the FAA and HRS Chapter 658A contain nearly identical
provisions regarding the validity of agreements to arbitrate, and both require
courts to apply state contract law principles.  See 9 U.S.C.A. § 2; HRS
§ 658A-6.  We therefore need not decide whether 9 U.S.C.A. § 2 or HRS § 658A-6
is controlling and may rely on cases construing either provision.

before any unit was purchased and before an association and a board were formed. The Declaration also prohibits amendments without SunStone's written consent and joinder. Thus, the Board argues the arbitration provisions were offered on a "take it or leave it" basis with no meaningful opportunity for negotiation.

However, the two cases the Board cited in support of its argument, Villa Milano Homeowners Ass'n v. Il Davorge, 102 Cal. Rptr. 2d 1 (Cal. Ct. App. 2000) and Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC, 113 Cal. Rptr. 3d 399 (Cal. Ct. App. 2010), were both overruled and disapproved of by the California Supreme Court in Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC, 282 P.3d 1217 (Cal. 2012) (Pinnacle), and its analysis is relevant.

In Pinnacle, the California Supreme Court concluded the arbitration provisions in a condominium's declaration of covenants, conditions, and restrictions were not procedurally unconscionable against an association. Pinnacle, 282 P.3d at 1231-33. The California act governing common interest developments expressly provides for a developer's capacity to record a declaration that, when accepted by the first purchaser, binds all others who accept deeds. Actual notice is not required to enforce the declaration's terms because recording provides sufficient notice. Id. at 1225-26. The court concluded the act's intent is to permit developers "to develop and market their properties to purchasers as condominium developments operating under certain covenants and restrictions." Id. at 1232. The act ensures the terms in the project's declaration will be accepted and respected in accordance with the expectations of all property owners and will not be disturbed by subsequent modifications by an association or a board. Id. at 1232-33.

Although the CPA and California's act are not identical, the CPA similarly requires developers draft and record a declaration before offering any units for sale to the public, and thus the Board's arguments are unpersuasive. See HRS § 514A-

11, 514A-40, 514A-105 (2006 Repl.). We see no reason to frustrate the expectations of the purchasers, the developer, and other stakeholders who relied on the Declaration provisions setting forth a clear and binding procedure for resolving disputes on matters of common interest. The record indicates the condominium purchasers received reasonable notice of the arbitration provisions. The sales agreement clearly and conspicuously noted that mandatory arbitration would apply, and it required buyers initial by hand, a page stating the buyer "had full opportunity to read and review and hereby approves and accepts" the project documents, including the Declaration. Each buyer also signed a separate document acknowledging the buyer's receipt and agreement to read and understand the Warranty.

Furthermore, the CPA provides additional mechanisms aimed at ensuring sufficient notice of the declaration's terms. For example, developers must provide prospective purchasers with a notice describing the purchaser's thirty-day right to cancel and a copy of the project's public report, which is reviewed by the Real Estate Commission and must disclose all material facts pertaining to the project. HRS §§ 514A-36, 514A-62 (2006 Repl.). In addition to notice by recording, the declaration must also be kept available to prospective purchasers and owners at the managing agent's office, and all board members must receive a copy of the declaration. HRS §§ 514A-84.5, 514A-82(b)(11) (2011). Thus, there is no element of unfair surprise or oppression regarding the arbitration provisions, and we conclude neither the Declaration nor the Warranty evidence procedural unconscionability.

Moreover, the arbitration provisions are not so unreasonable or unfairly one-sided to be substantively unconscionable. The requirement for a BV-rated attorney is not unduly burdensome, as evidenced by the Board's ability to engage and retain a BV-rated attorney since the beginning of this dispute. Further, the attorney's opinion letter only needs to

provide an estimate of an association's likelihood of success and the legal costs and fees, which would help unit owners decide whether to incur the burdens of a proceeding. Nothing in Section R requires the attorney to reveal litigation strategy or any other privileged information, as the Board claims. Finally, as discussed above, the Declaration provisions regarding obtaining unit owners' approval and funding proceedings apply to any major litigation or arbitration instituted against any party, not only against SunStone. Thus, the provisions are a justifiable means of obtaining the owners' informed, collective decision about initiating a major proceeding, and they do not unfairly favor SunStone. For these reasons, we conclude the arbitration provisions are not unconscionable and are enforceable against the Board.

## IV. CONCLUSION

We reverse the November 10, 2011 Final Judgment and the July 19, 2011 "Order Granting Applicant Association of Apartment Owners of the Waikoloa Beach Villas, by its Board of Directors' Motion to Compel Mediation and Arbitration" both entered in the Circuit Court of the Third Circuit and this case is remanded for further proceedings.

On the briefs:

Michael L. Freed
Brad S. Petrus
David R. Harada-Stone
(Tom Petrus & Miller)
for Respondent-Appellant.

Terrance M. Revere
Malia Nickison-Beazley
(Revere & Associates)
for Applicant-Appellee.

11