**Electronically Filed**
**Supreme Court**
**SCWC-12-0000819**
**03-JUN-2015**
**08:14 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

KRISHNA NARAYAN; SHERRIE NARAYAN; VIRENDRA NATH;
NANCY MAKOWSKI; KEITH MACDONALD AS CO-TRUSTEE FOR THE
DKM TRUST DATED OCTOBER 7, 2011; SIMON YOO; SUMIYO SAKAGUCHI;
SUSAN RENTON, AS TRUSTEE FOR THE RENTON FAMILY TRUST
DATED 12/3/09; STEPHEN XIANG PANG; FAYE WU LIU; MASSY MEHDIPOUR
AS TRUSTEE FOR MASSY MEHDIPOUR TRUST DATED JUNE 21, 2006;
G. NICHOLAS SMITH; TRISTINE SMITH; RITZ 1303 RE, LLC, a Colorado
Limited Liability Company; and BRADLEY CHAFFEE AS TRUSTEE OF THE
CHARLES V. CHAFFEE BRC STOCK TRUST DATED 12/1/99
AND THE CLIFFORD W. CHAFFEE BRC STOCK TRUST DATED 1/4/98,
Petitioners/Plaintiffs-Appellees,

vs.

THE RITZ-CARLTON DEVELOPMENT COMPANY, INC.;
THE RITZ-CARLTON MANAGEMENT COMPANY, LLC; JOHN ALBERT; EDGAR GUM,
Respondents/Defendants-Appellants,

and

MARRIOTT INTERNATIONAL INC.; MAUI LAND & PINEAPPLE CO., INC.;
EXCLUSIVE RESORTS, LLC; KAPALUA BAY, LLC;
ASSOCIATION OF APARTMENT OWNERS OF KAPALUA BAY CONDOMINIUM;
CAROLINE PETERS BELSOM; CATHY ROSS; ROBERT PARSONS;
RYAN CHURCHILL; THE RITZ-CARLTON HOTEL COMPANY, L.L.C.;
MARRIOTT VACATIONS WORDWIDE, CORPORATION; MARRIOTT OWNERSHIP
RESORTS, INC.; MARRIOTT TWO FLAGS, LP; MH KAPALUA VENTURE, LLC;
MLP KB PARTNER LLC; KAPALUA BAY HOLDINGS, LLC; ER KAPALUA
INVESTORS FUND, LLC; ER KAPALUA INVESTORS FUND HOLDINGS, LLC;
EXCLUSIVE RESORTS DEVELOPMENT COMPANY, LLC; and EXCLUSIVE RESORTS
CLUB I HOLDINGS, LLC, Respondents/Defendants.

SCWC-12-0000819

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-12-0000819; CIV. NO. 12-1-0586(3))

JUNE 3, 2015

RECKTENWALD, C.J., NAKAYAMA, McKENNA AND POLLACK, JJ.,
AND CIRCUIT JUDGE NAKASONE, IN PLACE OF ACOBA, J., RECUSED

OPINION OF THE COURT BY NAKAYAMA, J.

In this appeal we address whether the plaintiffs, a group of individual condominium owners, can be compelled to arbitrate claims arising from financial problems at a Maui condominium project. We hold that because the condominium owners did not unambiguously assent to arbitration, the purported agreement to arbitrate is unenforceable. We also address the doctrine of unconscionability.

## I. BACKGROUND

### A. Factual History

This case arose from the financial breakdown of a Maui condominium development formerly known as the Ritz-Carlton Club & Residences at Kapalua Bay (the project). The project consists of 84 private ownership condominium units and was developed by Defendant Kapalua Bay, LLC (the developer), a joint venture owned by Defendants Marriott International, Inc. (Marriott), Exclusive Resorts, Inc., and Maui Land & Pineapple Co., Inc. Petitioners/Plaintiffs-Appellees Krishna Narayan, et al. (collectively the Homeowners) purchased ten of the condominiums

2

units from the developer. The developer owns 56 of the condominium units. The Homeowners, the developer, and other third-party owners comprise the Association of Apartment Owners of Kapalua Bay Condominium (AOAO).

Respondents/Defendants-Appellants the Ritz-Carlton Development Company, Inc. (RCDC) and the Ritz-Carlton Management Company, LLC (RCMC) were the original development and management companies for the project, and were then wholly-owned subsidiaries of Marriott. Respondents/Defendants-Appellants John Albert (Albert) and Edgar Gum (Gum) served on the board of directors of the AOAO while allegedly being employed by either Marriott or Ritz-Carlton.

1.   The Financial Breakdown of the Project

In April of 2012, the Homeowners learned that the developer and its affiliated entities had defaulted on loans encumbering the project.[1] As a result, the developer could not pay several months of maintenance and operator fees to Marriott's management subsidiaries, and it defaulted on its corresponding AOAO assessments. Due to these problems, Marriott decided to abandon the project and to pull its valuable Ritz-Carlton branding. In the course of its departure, Marriott or one of its

_____

[1]   These facts, drawn from the pleadings, are taken as true for the limited purpose of reviewing Respondents' motion to compel arbitration. See Douglass v. Pflueger Hawaii, Inc., 110 Hawaiʻi 520, 524-25, 135 P.3d 129, 133-34 (2006).

subsidiaries used its authority as managing agent to withdraw approximately $1,300,000.00 from the AOAO's operating fund, and threatened to withdraw the remaining $200,000.00 from the fund. AOAO board members, many of whom were employed by Marriott, Ritz-Carlton, and/or other interested entities, did not attempt to block Marriott from taking these actions. Instead, the AOAO board indicated that the multi-million dollar shortfall would have to be covered by the Homeowners.

2. Documents Governing the Project

Prior to the sale of individual condominium units, several documents relating to the governance of the project were recorded in the State of Hawaiʻi Bureau of Conveyances pursuant to the requirements of Hawaiʻi Revised Statutes (HRS) Chapter 514A. These documents included the Declaration of Condominium Property Regime of Kapalua Bay Condominium (condominium declaration) and the Association of Apartment Owners of Kapalua Bay Condominium Bylaws (AOAO bylaws). Additionally, the developer registered a Condominium Public Report (public report) with the Hawaii Real Estate Commission. These documents were incorporated by reference through purchase agreements that the Homeowners executed when they purchased their condominiums.

a. **The Purchase Agreements**

The Homeowners entered into purchase agreements with

4

the developer soon after the documents governing the project were recorded.[2]  The first page of the purchase agreements state:

> **ACKNOWLEDGMENT OF RECEIPT, OPPORTUNITY TO REVIEW, AND ACCEPTANCE OF PROJECT DOCUMENTS**
>
> THE FOLLOWING DOCUMENTS THAT ARE REFERRED TO IN THIS PURCHASE AGREEMENT FORM AN ESSENTIAL PART HEREOF.  PURCHASER ACKNOWLEDGES THAT PURCHASER HAS RECEIVED COPIES OF EACH OF THE FOLLOWING DOCUMENTS AND THAT PURCHASER HAS HAD A FULL AND COMPLETE OPPORTUNITY TO READ, REVIEW AND EXAMINE EACH OF THE FOLLOWING DOCUMENTS.
>
> . . . .
>
> 2.    the applicable state of Hawaii Condominium Public Report(s)
>
> 3.    the Declaration of Condominium Property Regime of Kapalua Bay Condominium
>
> 4.    the Bylaws of the Association of Apartment Owners of Kapalua Bay Condominium

The purchase agreements also contain a clause entitled "Purchaser's Approval and Acceptance of Project Documentation," which states:

> Purchaser acknowledges . . . having had a full opportunity to read and review and hereby approves and accepts the following documents . . .: the Condominium Public Report(s) indicated in Section C.5, above, the Declaration, the Bylaws . . . .  It is understood and agreed that this sale is in all respects subject to said documents.

The Homeowners do not dispute that they received the condominium declaration, the public report, and the AOAO bylaws along with their purchase agreements.

The arbitration clause at issue in this case appears in the condominium declaration, which is referenced more than twenty

---

[2]    Representative purchase agreements from two of the Homeowners were cited by the parties.  These agreements appear to be identical and were signed by these Homeowners in late May of 2006.

times in the purchase agreements and in a variety of contexts.
For example, the purchase agreements state: "Seller . . .
reserves the right to utilize unassigned or guest parking spaces
described in the Declaration."  The purchase agreements also
state: "Purchaser agrees to purchase from Seller, in fee simple,
the following property: a. The Apartment designated in Section A
above and more fully described in the Declaration."  Thus, on
many occasions, the purchaser is put on notice that more specific
information concerning particular rights and obligations is
contained in the condominium declaration.

The purchase agreements contain two clauses related to
dispute resolution:

> 47. <u>Waiver of Jury Trial</u>. Seller and Purchaser hereby
> expressly waive their respective rights to a jury trial on
> any claim or cause of action that is based upon or arising
> out of this Purchase Agreement. . . . <u>Venue for any cause of
> action brought by Purchaser hereunder shall be in the Second
> Circuit Court, State of Hawaiʻi</u>.
>
> 48. <u>Attorneys['] Fees</u>. If any legal or other proceeding,
> including arbitration, is brought . . . because of an
> alleged dispute, breach, default or misrepresentation in
> connection with any provisions of this Agreement, the
> successful or prevailing party or parties shall be entitled
> to recover reasonable attorneys' fees, court costs and all
> expenses even if not taxable as court costs, . . . in
> addition to any other relief to which such party or parties
> may be entitled.

These clauses do not mention a binding agreement to arbitrate,
nor do they direct the purchaser to the alternative dispute
resolution clause in the condominium declaration.

### b.    The Condominium Declaration

The arbitration clause at issue in this case appears on

pages 34 and 35 of the 36-page condominium declaration.  It states:

> XXXIII. ALTERNATIVE DISPUTE RESOLUTION.
>
> In the event of the occurrence of any controversy or claim arising out of, or related to, this Declaration or to any alleged construction or design defects pertaining to the Common Elements or to the Improvements in the Project ("dispute"), . . . the dispute shall be resolved by arbitration pursuant to this Article and the then-current rules and supervision of the American Arbitration Association.

The arbitration clause contains several other relevant provisions.  First, it states: "The arbitration shall be held in Honolulu, Hawaii before a single arbitrator who is knowledgeable in the subject matter at issue."  Second, it states: "The arbitrator shall not have the power to award punitive, exemplary, or consequential damages, or any damages excluded by, or in excess of, any damage limitations expressed in this Declaration." Third, it states:

> The arbitrator may order the parties to exchange copies of nonrebuttable exhibits and copies of witness lists in advance of the arbitration hearing.  However, the arbitrator shall have no other power to order discovery or depositions unless and then only to the extent that all parties otherwise agree in writing.

Fourth, it states: "Neither a party, witness, [n]or the arbitrator may disclose the facts of the underlying dispute or the contents or results of any negotiation, mediation, or arbitration hereunder without prior written consent of all parties."  Finally, it states:

> No party may bring a claim or action regardless of form, arising out of or related to this Declaration . . . including any claim of fraud, misrepresentation, or

7

fraudulent inducement, more than one year after the cause of action accrues, unless the injured party cannot reasonably discover the basic facts supporting the claim within one year.

### c.    The Public Report and the AOAO Bylaws

The purchase agreements also incorporate the terms of the public report and the AOAO bylaws.  With respect to dispute resolution, the public report states:

> The Condominium Property Act (Chapter 514A, HRS), the Declaration, Bylaws, and House Rules control the rights and obligations of the apartment owners with respect to the project and the common elements, to each other, and to their respective apartments.  <u>The provisions of these documents are intended to be, and in most cases are, enforceable in a court of law.</u>

The AOAO bylaws main reference to dispute resolution is an attorney's fees provision that awards fees and costs to the prevailing party in certain types of disputes.

## B.    Procedural History

On June 7, 2012, the Homeowners filed suit in the Circuit Court of the Second Circuit (circuit court) asserting claims for breach of fiduciary duty, "access to books and records," and injunctive/declaratory relief.[3]  Respondents filed a motion to compel arbitration on July 5, 2012, which was summarily denied by the circuit court after a hearing.

Respondents appealed to the ICA.  They argued that the circuit court gravely erred when it denied their motion because a valid arbitration agreement existed, this dispute fell within the

---

[3]    The Honorable Joseph E. Cardoza presided.

8

scope of that agreement, and because the arbitration terms were conscionable. In their Answering Brief, the Homeowners argued that they had not assented to arbitration terms "buried" in a condominium declaration, that the terms of their purchase agreements created ambiguity regarding their assent to arbitrate, and that even if they had agreed to arbitrate, this dispute fell outside the scope of that agreement. The Homeowners also argued that the arbitration clause was unconscionable because it severely limited discovery, imposed a one-year statute of limitations, and served to unilaterally shield Ritz-Carlton and its partners from liability.

The Intermediate Court of Appeals (ICA) rejected all of the Homeowners' arguments. It held that the parties had entered a valid agreement to arbitrate and that this dispute fell within the scope of that agreement. The ICA also held that the Homeowners could not establish that the arbitration clause was procedurally unconscionable because they received reasonable notice of the arbitration provision, signed an acknowledgment, and had the right to cancel their purchase agreements within thirty days of receiving the public report. The ICA did not address the alleged substantive unconscionability of the arbitration terms. The ICA also separately held that the arbitration clause was not an unenforceable contract of adhesion because the Homeowners were not "subjected to 'oppression' or a

9

lack of all meaningful choice; individual Homeowners could elect to buy property subject to the recorded Declaration and the arbitration clause, or not."

## II. STANDARD OF REVIEW

"[T]his court reviews the decisions of the ICA for (1) grave errors of law or fact or (2) obvious inconsistencies in the decision of the ICA with that of the supreme court, federal decisions, or its own decisions." State v. Wheeler, 121 Hawaiʻi 383, 390, 219 P.3d 1170, 1177 (2009) (citing HRS § 602-59(b) (Supp. 2012)).

"A petition to compel arbitration is reviewed de novo." Siopes v. Kaiser Found. Health Plan, Inc., 130 Hawaiʻi 437, 446, 312 P.3d 869, 878 (2013). "The standard is the same as that which would be applicable to a motion for summary judgment, and the trial court's decision is reviewed 'using the same standard employed by the trial court and based upon the same evidentiary materials as were before [it] in determination of the motion.'" Brown v. KFC Nat'l Mgmt. Co., 82 Hawaiʻi 226, 231, 921 P.2d 146, 151 (1996) (brackets in original) (quoting Koolau Radiology, Inc. v. Queen's Medical Ctr., 73 Haw. 433, 439–40, 834 P.2d 1294, 1298 (1992)).

### III. DISCUSSION

The Federal Arbitration Act (FAA) governs arbitration agreements that involve "commerce among the several states," 9 U.S.C. §§ 1-2 (1947), and "reflects the fundamental principle that arbitration is a matter of contract." Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 67 (2010). Accordingly, it "places arbitration agreements on an equal footing with other contracts, and requires courts to enforce them according to their terms." Id. (internal citations omitted). The parties do not dispute the applicability of the FAA to their dispute.

"'[W]hen presented with a motion to compel arbitration, the court is limited to answering two questions: 1) whether an arbitration agreement exists between the parties; and 2) if so, whether the subject matter of the dispute is arbitrable under such agreement.'" Douglass v. Pflueger Hawaii, Inc., 110 Hawaiʻi 520, 530, 135 P.3d 129, 139 (2006) (brackets omitted) (quoting Koolau Radiology Inc., 73 Haw. at 445, 834 P.2d at 1300). Pursuant to the FAA, we apply general state-law principles of contract interpretation to questions of contract formation, Perry v. Thomas, 482 U.S. 483, 492 n.9 (1987), while resolving ambiguities as to the scope of arbitration in favor of arbitration. See Lee v. Heftel, 81 Hawaiʻi 1, 4, 911 P.2d 721, 724 (1996); Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,

11

460 U.S. 1, 23 (1983).  However, "the mere existence of an arbitration agreement does not mean that the parties must submit to an arbitrator disputes which are outside the scope of the arbitration agreement."  Brown, 82 Hawaiʻi at 244, 921 P.2d at 164 (citation and internal quotation marks omitted).  "What issues, if any, are beyond the scope of a contractual agreement to arbitrate depends on the wording of the contractual agreement to arbitrate."  Rainbow Chevrolet, Inc. v. Asahi Jyuken (USA), Inc., 78 Hawaiʻi 107, 113, 890 P.2d 694, 700 (App. 1995).  An arbitration agreement is interpreted like a contract, and "as with any contract, the parties' intentions control."  Heftel, 81 Hawaiʻi at 4, 911 P.2d at 724.  "The party seeking to compel arbitration carries the initial burden of establishing that an arbitration agreement exists between the parties."  Siopes, 130 Hawaiʻi at 446, 312 P.3d at 878.

## A.    The Existence of an Arbitration Agreement

This court has addressed the formation of an agreement to arbitrate on a number of occasions.  See, e.g., Siopes, 130 Hawaiʻi 437, 312 P.3d 869; Douglass, 110 Hawaiʻi 520, 135 P.3d 129; Brown, 82 Hawaiʻi 226, 921 P.2d 146; Luke v. Gentry Realty, Ltd., 105 Hawaiʻi 241, 96 P.3d 261 (2004).  The following three elements are necessary to prove the existence of an enforceable agreement to arbitrate: "(1) it must be in writing; (2) it must

12

be <u>unambiguous as to the intent to submit disputes or controversies to arbitration</u>; and (3) there must be bilateral consideration." <u>Douglass</u>, 110 Hawaiʻi at 531, 135 P.3d at 140 (emphasis added). In this case, the arbitration clause appears in writing and the Homeowners have not argued that it lacks bilateral consideration. Thus, we are only concerned with the second requirement. "With respect to the second requirement, 'there must be a mutual assent or a meeting of the minds on all essential elements or terms to create a binding contract.'" <u>Siopes</u>, 130 Hawaiʻi at 447, 312 P.3d at 879 (emphasis omitted) (quoting <u>Douglass</u>, 110 Hawaiʻi at 531, 135 P.3d at 140). "The existence of mutual assent or intent to accept is determined by an objective standard." <u>Id.</u>

This court has identified at least two circumstances where the requisite unambiguous intent to arbitrate may be lacking. First, where a contract contains one or more dispute resolution clauses that conflict, we have resolved that ambiguity against the contract drafter and held that the parties lacked the unambiguous intent to arbitrate. For example, in <u>Luke</u>, we held that an arbitration clause was unenforceable where the ambiguity between it and a reservation of remedies clause meant that a reasonable buyer "would not know whether she or he maintained the right to judicial redress or whether she or he had agreed to

13

arbitrate any potential dispute."  105 Hawaiʻi at 249, 96 P.3d at 269.

Second, where a party has received insufficient notice of an arbitration clause in a document that is external to the contract that the party signed, we have held that the party lacked the unambiguous intent to arbitrate and that the purported agreement was unenforceable.  For example, in Siopes, this court held that an arbitration clause was unenforceable where it was not contained in a document that was made available to the plaintiff at the time he executed his contract and where nothing in the surrounding circumstances suggested that the plaintiff was otherwise on notice of the arbitration provision.  130 Hawaiʻi at 452, 312 P.3d at 884.  Likewise, in Douglass, we held that an arbitration clause contained in an employee handbook was unenforceable where the employment contract that the employee signed did not contain the arbitration provision or notify employee of the provision, the handbook stated that its policies were merely guidelines, the arbitration provision was not boxed off or otherwise set apart from the other provisions in the handbook, and there was no evidence that the employee was ever informed of the existence of the arbitration provision.  110 Hawaiʻi at 531-32, 135 P.3d at 140-41.  By contrast, in Brown, this court held that an arbitration clause was enforceable where

14

it was conspicuously labeled and boxed off in the "Employee Rights" subsection of an employment application, and where the applicant's signature line appeared right below the arbitration clause.  82 Hawaiʻi at 159-60, 921 P.2d at 239-40.

In this case, the purported agreement to arbitrate is unenforceable because it is ambiguous when taken together with the terms of the purchase agreements and the public report.  The purchase agreements contain a provision that states: "Venue for any cause of action brought by Purchaser hereunder shall be in the Second Circuit Court, State of Hawaiʻi."  This conflicts with the arbitration term stating that all claims "arising out of" the condominium declaration "shall be decided by arbitration," and that the "arbitration shall be held in Honolulu, Hawaii." Given that the purchase agreements reference the condominium declaration more than twenty times and that both documents contain dispute resolution provisions that use broad language to define their scope, a dispute may arise out of both the purchase agreement and the declaration.  It is facially ambiguous whether those disputes would be consigned to arbitration in Honolulu pursuant to the condominium declaration or the "Second Circuit Court" pursuant to the purchase agreement.

The public report creates further ambiguity.  It states: "[T]he Declaration, Bylaws, and House Rules control the rights and obligations of the apartment owners . . . .  The

15

provisions of these documents are intended to be, and in most cases are, enforceable in a court of law." A reasonable buyer presented with these documents "would not know whether she or he maintained the right to judicial redress or whether she or he had agreed to arbitrate any potential dispute." Luke, 105 Hawaiʻi at 249, 96 P.3d at 269. "Resolving this ambiguity in favor of the Plaintiffs, we cannot say that the Plaintiffs agreed to submit the claims made in this litigation to arbitration." Id.

In sum, we hold that the arbitration provision contained in the condominium declaration is unenforceable because the terms of the various condominium documents are ambiguous with respect to the Homeowners' intent to arbitrate. Luke, 105 Hawaiʻi at 249, 96 P.3d at 269. The ICA gravely erred when it concluded that the parties had formed a valid and enforceable agreement to arbitrate.

## B. Unconscionability

The FAA provides that an agreement to arbitrate is unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, like other contracts, arbitration provisions "may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." Rent-A-Center, West, Inc., 130 S. Ct. at 2776 (internal quotation marks and citation omitted). "Courts

may not, however, invalidate arbitration agreements under state laws applicable only to arbitration provisions." Doctor's Assocs., Inc. v. Casarotto, 116 S. Ct. 1652, 1656 (1996). Although our determination regarding the existence of an arbitration agreement is dispositive in this case, the arbitration clause also contains unconscionable terms.

"'Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" Siopes, 130 Hawaiʻi at 458, 312 P.3d at 890 (quoting City & Cnty. of Honolulu v. Midkiff, 62 Haw. 411, 418, 616 P.2d 213, 218 (1980)). Stated otherwise, "a determination of unconscionability requires a showing that the contract was both procedurally and substantively unconscionable." Balogh v. Balogh, 134 Hawaiʻi 29, 41, 332 P.3d 631, 643 (2014) (internal quotations, alterations, and citation omitted); see also Lewis v. Lewis, 69 Haw. 497, 502, 748 P.2d 1362, 1366 (1988) ("[T]wo basic principles are encompassed within the concept of unconscionability, one-sidedness and unfair surprise.").

Our caselaw defining when a contract of adhesion is unenforceable is best understood as a subset of unconscionability that utilizes the two-part unconscionability inquiry described above. We have stated:

17

> a contract that is "adhesive" -- in the sense that it is drafted or otherwise proffered by the stronger of the contracting parties on a "take it or leave it" basis -- is unenforceable if two conditions are present: (1) the contract is the result of coercive bargaining between parties of unequal bargaining strength; and (2) the contract unfairly limits the obligations and liabilities of, or otherwise unfairly advantages, the stronger party.

Brown, 82 Hawaiʻi at 247, 921 P.2d at 167.  The first condition corresponds to procedural unconscionability and the second condition corresponds to substantive unconscionability.

Although both procedural and substantive unconscionability are required in most cases, they need not be present in the same degree.  See Balogh, 134 Hawaiʻi at 41, 332 P.3d at 643.  "Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation . . . in proportion to the greater harshness or unreasonableness of the substantive terms themselves."  15 Samuel Williston, Contracts § 1763A (3d ed. 1972).  "In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable."  Armendariz v. Found. Health Psychcare Servs., Inc., 6 P.3d 669, 690 (Cal. 2000).  Indeed, we have stated that "there may be exceptional cases where a provision of the contract is so outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability alone."  Balogh, 134 Hawaiʻi at 41, 332 P.3d at

18

643 (internal quotations and citation omitted). Here, the ICA gravely erred by placing dispositive weight on procedural unconscionability without addressing the alleged substantive unconscionability of the arbitration terms. In addition, the ICA gravely erred when it concluded that the Homeowners had failed to demonstrate procedural unconscionability.

1. Procedural Unconscionability

"The procedural element of unconscionability requires an examination of the contract formation process and the alleged lack of meaningful choice." Gillman v. Chase Manhattan Bank, N.A., 534 N.E.2d 824, 828 (N.Y. 1988). This analysis is narrowed in the context of adhesion contracts, because the term "adhesion contract" refers to contracts that are "drafted or otherwise proffered by the stronger of the contracting parties on a 'take it or leave it' basis." Brown, 82 Hawaiʻi at 247, 921 P.2d at 167. "Consequently, the terms of the contract are imposed upon the weaker party who has no choice but to conform." Id. Although adhesion contracts are not unconscionable per se, they are defined by a lack of meaningful choice, and thus, often satisfy the procedural element of unconscionability.

For example, in Brown, a prospective employee was "offered the possibility of employment on a take it or leave it form . . . that had to be filled out and signed by [the plaintiff] if he wanted to be considered for employment with

19

KFC." 82 Hawaiʻi at 247, 921 P.2d at 167. Based on that fact alone, this court held that procedural unconscionability, was present "insofar as [the plaintiff's] submission to the arbitration agreement was the result of coercive bargaining between parties of unequal bargaining strength." Id. (quotation marks omitted). In other words, the adhesive nature of the terms contained in KFC's employment application satisfied the procedural element of unconscionability. Id.

In this case, there is a higher degree of procedural unconscionability than was present in Brown. Not only was the declaration drafted by a party with superior bargaining strength, it was recorded in the bureau of conveyances prior to the execution of the purchase agreements. The Homeowners had no choice but to conform to the terms of the declaration as recorded if they wanted to purchase a Ritz-Carlton condominium on Maui. Thus, the declaration is "'adhesive' -- in the sense that it [was] drafted or otherwise proffered by the stronger of the contracting parties . . . 'on a take this or nothing' basis." Brown, 82 Hawaiʻi at 247, 921 P.2d at 167. Additionally, there is an element of unfair surprise that was not present in Brown: The arbitration clause was buried in an auxiliary document and was ambiguous when read in conjunction with the purchase agreements and the public report. For these reasons, the

Homeowners satisfied the procedural prong of the test for unconscionability.

The ICA applied a different test for procedural unconscionability, requiring that "the party seeking to avoid enforcement had no viable alternative source to obtain the services contracted for."  Although a lack of viable alternatives may provide some indicia of procedural unconscionability, it is by no means a necessary or dispositive factor.  See Potter v. Hawaii Newspaper Agency, 89 Hawaiʻi 411, 424, 974 P.2d 51, 64 (1999) (stating only that "[t]he disparity of bargaining power was made more acute by the paucity of employment opportunities available to young people" (emphasis added)).

In addition, the ICA's application of Ass'n of Apartment Owners of Waikoloa Beach Villas ex rel. Bd. of Dirs. v. Sunstone Waikoloa, LLC, 129 Hawaiʻi 117, 122, 295 P.3d 987, 992 (App. 2013), was erroneous.  In Waikoloa Beach Villas, the ICA held that an arbitration clause contained in a condominium declaration was not procedurally unconscionable because, despite the adhesive nature of the declaration, the developer's compliance with HRS Chapter 514A ensured that the condominium purchasers had received reasonable notice of the condominium declaration's terms.  Id.  The ICA supported its holding with the policy argument that a finding of procedural unconscionability

21

would "frustrate the expectations of the purchasers, the developer, and other stakeholders who relied on the Declaration provisions." Id. (relying on Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC, 282 P.3d 1217, 1232-33 and n.13 (2012)). The ICA also held that the arbitration provision was not substantively unconscionable. Waikoloa Beach Villas, 129 Hawaiʻi at 122-23, 295 P.3d at 992-93.

We disagree with the ICA's application of Waikoloa Beach Villas to the case at bar. By concluding that the arbitration clause was not procedurally unconscionable under Waikoloa Beach Villas without also addressing substantive unconscionability, the ICA suggested that a condominium developer could impose substantively unconscionable terms on a purchaser as long as the developer complied with the procedural requirements of HRS Chapter 514A and provided reasonable notice of the unconscionable terms. This implication is inconsistent with the approach in Waikoloa Beach Villas, in which the ICA addressed both procedural and substantive unconscionability, and the legislature's purpose in enacting HRS Chapter 514A, "to protect the buying public and to create a better reception by that public for the condominium developer's product." Ass'n of Owners of Kukui Plaza v. City and Cnty. of Honolulu, 7 Haw. App. 60, 69, 742 P.2d 974, 980 (1987). By not addressing substantive unconscionability, the ICA could not fully determine whether the

22

agreement was unconscionable.  Conversely, to avoid the terms of a declaration a party must establish more than adhesion, the party must establish that the challenged terms are substantively unconscionable.  A mere finding of procedural unconscionability would not eviscerate the terms of an HRS Chapter 514A condominium declaration.

       2.    <u>Substantive Unconscionability</u>

      A contract term is substantively unconscionable where it "unfairly limits the obligations and liabilities of, or otherwise unfairly advantages, the stronger party."  <u>Brown</u>, 82 Hawaiʻi at 247, 921 P.2d at 167.  Arbitration agreements are not usually regarded as unconscionable because "the agreement 'bears equally' on the contracting parties and does not limit the obligations or liabilities of any of them."  <u>Id.</u>  The agreement "'merely substitutes one forum for another.'"  <u>Leong by Leong v. Kaiser Found. Hosps.</u>, 71 Haw. 240, 248, 788 P.2d 164, 169 (1990) (quoting <u>Madden v. Kaiser Found. Hosps.</u>, 552 P.2d 1178, 1186 (Cal. 1976)).  However, an arbitration clause may be unconscionable if it unfairly deprives the party resisting arbitration an "effective substitute for a judicial forum." <u>Nishimura v. Gentry Homes, Ltd.</u>, 134 Hawaiʻi 143, 148, 338 P.3d 524, 529 (2014).  Here, the Homeowners argue that the arbitration clause is substantively unconscionable because it "purports to:

(1) effectively preclude all discovery; (2) eliminate rights to punitive, exemplary, and consequential damages; (3) require that all claims and underlying facts be kept secret, and (4) impose a one-year statute of limitations."

### a. Discovery Limitations and Confidentiality

Limitations on discovery serve an important purpose in arbitration because "the underlying reason many parties choose arbitration is the relative speed, lower cost, and greater efficiency of the process." Kona Vill. Realty, Inc. v. Sunstone Realty Partners, XIC, LLC, 123 Hawaiʻi 476, 477, 236 P.3d 456, 457 (2010) (internal citation omitted). By agreeing to arbitrate, a party "trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 105 S. Ct. 3346, 3354 (1985). Thus, reasonable limitations on discovery may be enforceable in accordance with our recognition of the strong federal policy in favor of arbitration.

At the same time, adequate discovery is necessary to provide claimants "a fair opportunity to present their claims" in the arbitral forum. Gilmer v. Interstate/Johnson Lane, Corp., 111 S. Ct. 1647, 1655 (1991). Although the amount of discovery that is adequate to sufficiently vindicate a party's claims does

not mean unfettered discovery, see Armendariz, 6 P.3d at 684-86 (stating that a party can agree to something less than the full panoply of discovery permitted under the California Arbitration Act), discovery limitations that unreasonably hinder a plaintiff's ability to prove a claim are unenforceable. See, e.g., In re Poly-America, L.P., 262 S.W.3d 337, 357-58 (Tex. 2008) (collecting cases). In addition, some limitations on discovery that might otherwise prove unenforceable have been held enforceable because the arbitrator maintained the ability to order further discovery upon a showing of need. See, e.g., Dotson v. Amgen, Inc., 181 Cal.App.4th 975, 982-84 (2010) (holding that limiting discovery to two depositions was not unconscionable where additional discovery was available upon a showing of need).

As is the case with discovery limitations, a "[c]onfidentiality provision by itself is not substantively unconscionable[.]" Davis v. O'Melveny & Myers, 485 F.3d 1066, 1079 (9th Cir. 2007) overruling on other grounds recognized by Ferguson v. Corinthian Colleges, Inc., 733 F.3d 928, 933-34 (2013). However, where an arbitration clause contains severe limitations on discovery alongside a confidentiality provision, the plaintiff may be deprived of the ability to adequately discover material information about his or her claim. See id. at 1078-79 (holding unconscionable a confidentiality provision in an

25

employment contract because it "would handicap if not stifle an employee's ability to investigate and engage in discovery"); see also Grabowski v. Robinson, 817 F.Supp.2d 1159, 1176-77 (S.D. Cal. 2011).

Here, the discovery limitations and confidentiality provision unconscionably disadvantage the Homeowners. The discovery limitations only allow the arbitrator to order the parties to turn over "nonrebuttable exhibits and copies of witness lists," and precludes the arbitrator from "order[ing] discovery or depositions unless and then only to the extent that all parties otherwise agree in writing." Thus, the arbitrator does not have the ability to order additional discovery, even on a showing of need. The confidentiality provision further precludes the Homeowners from mentioning "the facts of the underlying dispute without prior written consent of all parties, unless and then only to the extent required to enforce or challenge the negotiated agreement or the arbitration award, as required by law, or as necessary for financial and tax reports and audits." If the arbitration clause were enforced as written, the Homeowners would have virtually no ability to investigate their claims, and thus, would be deprived of an adequate alternative forum. These provisions are therefore

unconscionable.[4]

### b.   Punitive Damage Limitations

The Homeowners have also challenged the arbitration clause's restriction on punitive and consequential damages. "Punitive or exemplary damages are generally defined as those damages assessed in addition to compensatory damages for the purpose of punishing the defendant for aggravated or outrageous misconduct and to deter the defendant and others from similar conduct in the future." Masaki v. Gen. Motors Corp., 71 Haw. 1, 6, 780 P.2d 566, 570 (1989) (citation omitted). "Since the purpose of punitive damages is not compensation of the plaintiff but rather punishment and deterrence, such damages are awarded only when the egregious nature of the defendant's conduct makes such a remedy appropriate." Id. "The conduct must be outrageous, either because the defendant's acts are done with an evil motive or because they are done with reckless indifference to the rights of others." Restatement (Second) of Torts § 908, cmt. b (1979).

It would create an untenable situation if parties of superior bargaining strength could use adhesionary contracts to insulate "aggravated or outrageous misconduct" from the monetary remedies that are designed to deter such conduct. Masaki, 71

---

[4]     We do not decide whether the contractually shortened limitations period is unconscionable because there has been no assertion that the Homeowners' claims are barred by that provision.

Haw. at 6, 780 P.2d at 570. For this reason, many state supreme courts that have considered the issue have held that punitive damage limitations are unconscionable. See, e.g., Ex parte Thicklin, 824 So.2d 723 (Ala. 2002) overruled on other grounds by 929 So.2d 997 (Ala. 2005) ("[I]t violates public policy for a party to contract away its liability for punitive damages, regardless whether the provision doing so was intended to operate in an arbitral or a judicial forum."); Armendariz, 6 P.3d at 680, 683 ("'All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law.'") (quoting California Civil Code § 1668 (1872)); Carll v. Terminix Int'l Co., L.P., 793 A.2d 921, 923 (Pa. Super. Ct. 2002) (holding that an arbitration agreement was unconscionable because it precluded the arbitrator from awarding special, incidental, consequential, and punitive damages); State ex rel. Dunlap v. Berger, 567 S.E.2d 265 (W. Va. 2002) (holding that an arbitration agreement which prohibited punitive damages was unenforceable as against public policy).

Hawaiʻi law already disfavors limiting damages for intentional and reckless conduct. In Laeroc Waikiki Parkside, LLC v. K.S.K. (Oahu) Ltd. Partnership, 115 Hawaiʻi 201, 224, 166 P.3d 961, 984 (2007), this court held that a contract provision

limiting tort liability would violate public policy to the extent that it attempted to waive liability for criminal misconduct, fraud, or willful misconduct. Further, we have acknowledged that "[e]xculpatory contracts are not favored by the law because they tend to allow conduct below the acceptable standard of care." Fujimoto v. Au, 95 Hawaiʻi 116, 155, 19 P.3d 699, 739 (2001) (quoting Yauger v. Skiing Enterprises, Inc., 206 N.W.2d 60, 62 (Wis. 1996)). This court has also acknowledged that "although parties might limit remedies, such as recovery of attorney's fees or punitive damages . . . a court might deem such a limitation inapplicable where an arbitration involves statutory rights that would require these remedies." See Kona Vill., 123 Hawaiʻi at 485, 236 P.3d at 465 (Acoba, J., dissenting) (quoting Uniform Arbitration Act § 4, cmt. 3 (2000)). Extending these principles, and in reliance on persuasive authority from many other state supreme courts, we endorse the view that, with respect to adhesion contracts, a contract term that prohibits punitive damages is substantively unconscionable.[5]

## IV. CONCLUSION

For the foregoing reasons, we vacate the ICA's October 28, 2013 Judgment on Appeal, affirm the circuit court's

---

[5] By contrast, parties may limit consequential damages in appropriate situations. See, e.g., HRS § 490:2-712 (2008).

August 28, 2012 order denying Respondents' motion to compel arbitration, and remand to the circuit court for further proceedings consistent with this opinion.

Terence J. O'Toole,
Judith Ann Pavey, and
Andrew J. Lautenbach
for petitioners

Bert T. Kobayashi, Jr.,
Lex R. Smith, Joseph A.
Stewart and Maria Y. Wang
for respondents The Ritz-
Carlton Development Company,
Inc., The Ritz-Carlton
Management Company, LLC,
John Albert and Edgar Gum
and respondents Marriott
International, Inc., The
Ritz-Carlton Hotel Company,
LLC, Marriott Two Flags, LP,
Marriott Ownership Resorts,
Inc., MH Kapalua Venture,
LLC, and Marriott Vacations
Worldwide Corporation

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Karen T. Nakasone

